# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKIE BROOKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV-18-603-G |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Now before the Court is Defendant Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. No. 27). Plaintiff Vickie Brooks has responded (Doc. No. 35), Defendant has replied (Doc. No. 36), and the Motion is now at issue. After consideration of the parties' submissions, and for the reasons stated below, Defendant's Motion is granted.

*I.  Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence

admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> Parties may establish the existence or nonexistence of a material disputed fact by:
>
> • citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
>
> • demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

II.  Relevant Facts[1]

In May 2014, Defendant issued auto-insurance Policy No. PHPK1177144 (the "Policy") to Avalon Correctional Services, Inc. ("Avalon"). *See* Policy (Doc. No. 27-1).

---

[1] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

The Policy contained an Oklahoma Uninsured Motorists Coverage Endorsement, which provided uninsured motorist ("UM") coverage with a $1,000,000.00 limit. *See id.* at 4-7. The Endorsement required that payment would be made for a vehicle accident eligible for such coverage if, as relevant here: (1) a tentative settlement has been made between an insured and an insurer of an underinsured motor vehicle; and (2)(a) Defendant "[has] been given prompt written notice of such tentative settlement," and (2)(b) Defendant "[a]dvance[s] payment to the 'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification." Endorsement §§ A(2)(b), F(3)(b); *see also id.* §§ E(2)(c), E(3). The Endorsement further prescribed that when a corporation is the named insured, anyone occupying a covered vehicle is an "insured." *Id.* § B(2)(a).

On March 4, 2015, Plaintiff was involved in a motor-vehicle accident (the "Accident") when her work vehicle was struck by another vehicle on I-35 in Oklahoma City, Oklahoma. Def.'s Mot. at 2; Pl.'s Resp. at 2; Official Oklahoma Traffic Collision Report ("Collision Report") (Doc. No. 27-2) at 1. At the time of the accident, Plaintiff was driving a vehicle owned by Avalon and insured under the Policy. Def.'s Mot. at 2; Pl.'s Resp. at 2.[2] Plaintiff was also personally insured by AAA Insurance ("AAA"). Def.'s Mot. at 2; Pl.'s Resp. at 2. The other driver was operating a vehicle insured by State Farm Insurance Company ("State Farm"). Def.'s Mot. at 2; Pl.'s Resp. at 2.

The March 4, 2015 Official Oklahoma Traffic Collision Report, completed by police while at the scene of the Accident and issued that same day, identified Defendant

---

[2] The parties do not dispute that Plaintiff is the "insured" for purposes of title 36, section 3636 of the Oklahoma Statutes and *Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302 (Okla. 1982).

"PHILADELPHIA INDEMNITY" as the insurer of the vehicle driven by Plaintiff and also noted the Policy number PHPK1177144 and Defendant's telephone number. Collision R. at 1.

On or about April 27, 2015, Plaintiff made claims to State Farm and to AAA for damages arising out of the Accident. Def.'s Mot. at 2; Pl.'s Resp. at 3.

On June 24, 2015, Avalon faxed Defendant an Incident Report describing the circumstances of the Accident. Avalon Incident R. (Doc. No. 35-5) at 1; Pl.'s Resp. at 5. The next day, Defendant sent Avalon a Loss Acknowledgment Letter, noting a claim number and identifying "[t]he examiner assigned to handle this loss." PIIC Loss Ltr. (Doc. No. 35-6) at 1; Pl.'s Resp. at 5.

On February 10, 2017, in consideration for $25,000.00, Plaintiff released and discharged AAA for damages allegedly suffered as a result of the Accident. AAA Release (Doc. No. 27-3) at 1-2; Def.'s Mot. at 2; Pl.'s Resp. at 3.

On February 10, 2017, in consideration for $50,000.00, Plaintiff signed a release with State Farm thereby releasing and discharging the owner of the other vehicle, the driver of the other vehicle, and "all other persons, firms or corporations liable or, who might be claimed to be liable," "from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, . . . which have resulted or may in the future develop" from the Accident. State Farm Release (Doc. No. 27-4) at 1; Def.'s Mot. at 2-3; Pl.'s Resp. at 3.

Prior to February 10, 2017, Plaintiff did not notify Defendant of her potential settlements with AAA or State Farm. Nor did Plaintiff prior to that date file a claim for

4

UM benefits, or any other claim directly seeking benefits, against Defendant. Def.'s Mot. at 3; Pl.'s Resp. at 4; *see also* Auto. Loss Notice of Aug. 17, 2017 (Doc. No. 27-5) at 1 (initiating a "UM claim" for Plaintiff through her counsel), 2 (underwriter/agent for Defendant stating, "No claim was ever reported to the agent for this incident.").

On July 6, 2017, Plaintiff (through counsel) sent a letter to Defendant requesting information on UM coverage on the vehicle Plaintiff had been driving in the Accident. Pl.'s Ltr. (Doc. No. 35-8) at 1. On August 17, 2017, Plaintiff submitted an Automobile Loss Notice to Defendant, initiating a UM claim related to the Accident and notifying Defendant of the prior settlements with State Farm and AAA. Auto. Loss Notice of Aug. 17, 2017, at 1-2; Def.'s Mot. at 3; Pl.'s Resp. at 4.

Plaintiff filed this lawsuit on May 18, 2018, seeking judgment against Defendant under Oklahoma law in the sum of $1 million based upon Defendant's failure to pay benefits owed to Plaintiff for the Accident under the Policy. *See* Pet. (Doc. No. 1-1). *See generally Watson v. Farmers Ins. Co., Inc.*, 23 F. Supp. 3d 1342, 1350 (N.D. Okla. 2014) ("Courts applying Oklahoma law have generally held that an insurer's liability for breach of a UM insurance contract is limited to the amount of the UM policy coverage.").[3]

---

[3] The Petition does not allege that Defendant has actually denied Plaintiff's UM claim for benefits, and the record does not reflect any such denial. If there has been no denial, then Defendant would be entitled to summary judgment on Plaintiff's claim on that basis. *See Brock v. Prudential Ins. Co. of Am.*, No. 14-CV-16-JED-TLW, 2017 WL 1147771, at *3 & n.4 (N.D. Okla. Mar. 27, 2017) (finding that insurer was entitled to summary judgment on breach-of-contract claim under Oklahoma law where plaintiff "failed to show that [insurer] denied his claim for benefits at any time" and noting the absence of any law demonstrating that a delay in payment constitutes a breach of contract).

III.   *Defendant's Motion*

Defendant asserts that it is entitled to summary judgment on Plaintiff's claim for two reasons. First, Defendant argues that Plaintiff is precluded from bringing an action on the Policy because Plaintiff knowingly and affirmatively interfered with Defendant's subrogation rights in a manner that actually prejudiced Defendant by destroying those subrogation rights. *See* Def.'s Mot. at 5-7 (citing *Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302 (Okla. 1982)). Second, Defendant argues that Plaintiff's execution of a release agreement with State Farm also served to release Defendant from Plaintiff's claim for liability for damages arising from the Accident. *See id.* at 8-10.

   A. *Relevant Oklahoma Law*

In *Brambl v. GEICO General Insurance Co.*, the district court thoroughly outlined the statutory scheme applicable here:

> By Oklahoma statute, any insurance company entering into a contract with an insured to provide motor vehicle liability coverage must also offer UM coverage. *See* Okla. Stat. tit. 36, § 3636(A). . . . .
>
> UM coverage "does not insure uninsured motorists, (third parties); nor does it insure vehicles; rather, uninsured motorist coverage affords first-party coverage to person(s) for whom the insurance contract is being written." *Silver v. Slusher,* 770 P.2d 878, 885 (Okla.1988) (Silver, J., dissenting). . . . .
>
> The statutory definition of "uninsured motor vehicle," as used in § 3636(B), extends to "an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other." Okla. Stat. tit. 36, § 3636(C). . . . . This type of "uninsured motor vehicle" is often referred to as "underinsured motor vehicle," and such coverage is often referred to as UIM coverage. Consistent with the statute, the Court uses the term UM coverage as an inclusive term encompassing UIM coverage.

6

When the UM carrier's insured sustains injury by a negligently operated *under* insured motor vehicle, there are necessarily two insurance policies in play (injured party's UM coverage and tortfeasor's liability coverage). . . . .

*Brambl*, No. 10-CV-474-TCK-PJC, 2011 WL 5326076, at *2-3 (N.D. Okla. Nov. 4, 2011) (citation omitted).

The *Brambl* court also explained subrogation and the *Porter* defense:

Following is the subrogation provision of the UM statute:

F. *In the event of payment* [by UM carrier] to any person under the coverage required by this section [insured] and subject to the terms and conditions of such coverage, *the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person [insured] against any person or organization legally responsible for the bodily injury [tortfeasor]* for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. . . . Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

Okla. Stat. tit. 36, § 3636(F) ("§ 3636(F)") (emphasis added). The UM carrier's statutory "right to be subrogated is derived from, and limited to, the tort claim of the insured." *Frey v. Independence Fire and Cas. Co.*, 698 P.2d 17, 21 (Okla. 1985).

Therefore, "[i]f the insured releases the wrongdoer from liability, the insurer's subrogation rights may be viewed . . . as having been destroyed . . . because the insured no longer has a tort claim against the wrongdoer to which subrogation may be effected." [Johnny C. Parker,] *Uninsured Motorist Law in Oklahoma*, 34 Okla. City U. L. Rev. [363, 408 (2009)]; *see Porter v. MFA Mut. Ins. Co.*, 643 P.2d 302, 305 (Okla. 1982) ("[I]f an insured settles with and releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurer, the insurer's right of subrogation against the wrongdoer is thereby destroyed."). Although such a release extinguishes the UM carrier's subrogation rights, such a release also provides the UM carrier with a defense to an action to recover UM proceeds. *See Porter,* 643 P.2d at 305 (known in Oklahoma as a *Porter* defense).

Because the insured's voluntary settlement with the tortfeasor destroys the UM carrier's subrogation rights and operates as a forfeiture of any UM

> coverage, the Oklahoma Legislature "created a mechanism by which an insured could receive the equivalent of a settlement offer from the tortfeasor, while at the same time protecting the [UM] carrier's subrogation rights against the wrongdoer." *Uninsured Motorist Law in Oklahoma*, 34 Okla. City U. L. Rev. at 406. Specifically, the UM subrogation statute requires that an insured: (1) notify her UM carrier of any "tentative agreement to settle for liability limits with an insured tortfeasor," and (2) submit written documentation to her UM carrier of any pecuniary losses incurred, including copies of all medical bills. *See* Okla. Stat. tit. 36, § 3636(F)(1), (2). Once notified, a UM carrier may, at its election, "substitute its payment to the insured for the tentative settlement amount." *Id.* § 3636(F)(2). If the UM carrier substitutes its own payment for the liability insurer's settlement offer, the UM carrier is "entitled to the insured's right of recovery to the extent of such [liability settlement] payment and any settlement under the [UM] coverage." *Id.* If it does not elect to substitute, the UM carrier "has no right to the proceeds of any settlement or judgment . . . for any amount paid under the uninsured motorist coverage." *Id.*

*Id.* at *4 (most alterations in original) (omission and footnote omitted).

"[B]eing legally able to exercise subrogation rights," however, "is not the *sine qua non* of an obligation to pay a UM/UIM claim." *Phillips v. N.H. Ins. Co.*, 263 F.3d 1215, 1222 (10th Cir. 2001). The Oklahoma Supreme Court has previously held that "even if the UM carrier is legally barred from exercising its subrogation rights against the tort-feasor, it must still pay its insured *unless* it would be unfair in light of the insured's knowing, affirmative, and prejudicial conduct." *Id.*; *accord Brambl*, 2011 WL 5326076, at *4 n.3 ("In order for the [*Porter*] defense to apply, the insured must, at the time of executing the release of the tortfeasor, be voluntarily and knowingly interfering with its UM carrier's subrogation rights.").

### B. Discussion

Defendant argues that because Plaintiff voluntarily and knowingly interfered with Defendant's subrogation rights, by signing the State Farm and AAA releases in February

8

2017, her present claim is barred by the *Porter* defense. The facts as outlined above do reflect that Plaintiff signed these releases regarding a vehicle covered under Defendant's Policy, without notifying Defendant of any "tentative agreement[s]" as contemplated by Oklahoma Statute and the Policy. Okla. Stat. tit. 36, § 3636(F); *see supra*. The law outlined above supports the proposition that such conduct would destroy Defendant's subrogation rights and preclude Plaintiff's instant legal claim under *Porter*, such that Defendant generally would be entitled to judgment as a matter of law. *See* Okla. Stat. tit. 36, § 3636(F); *Porter*, 643 P.2d at 305; *Phillips*, 263 F.3d at 1219; *Brambl*, 2011 WL 5326076, at *4; *cf. Phillips*, 263 F.3d at 1224 (finding that insurer could not rely upon *Porter* defense where it denied the existence of UM coverage).

Plaintiff nevertheless objects that summary judgment should not be entered because significant factual disputes remain. *See* Fed. R. Civ. P. 56(a), (c).

### 1. *Plaintiff's Knowing Interference*

Plaintiff first argues that there is a genuine dispute as to whether her interference with Defendant's subrogation rights was "knowing." Pl.'s Resp. at 7-8, 10-11; *see Phillips*, 263 F.3d at 1222; *see also McFadden v. Arch Ins. Co.*, No. 12-CV-208-JHP, 2013 WL 105214, at *3 (E.D. Okla. Jan. 8, 2013) (denying summary judgment for insurer who had asserted the *Porter* defense where insurer failed to establish that plaintiff "was aware of the existence of the [insurance policy] at the time he released his claims").

The written Policy schedule of coverage in the record before the Court sets forth a number code ("02") of covered vehicles rather than identifying the particular vehicles subject to UM coverage. *See* Policy at 3. Plaintiff does not now dispute that her work

9

vehicle was one of the covered vehicles but highlights the fact that the Policy schedule did not identify her specific work vehicle as evidence that she "had no way of unambiguously knowing" that the vehicle was covered under the Policy. Pl.'s Resp. at 2.

This assertion is insufficient to show a genuine issue for trial. The Policy's UM-coverage Endorsement prescribes the insured's obligation to notify Defendant of any tentative settlement with an insurer of an underinsured vehicle. *See* Policy at 3; Endorsement §§ A(2)(b), E(2)(c); *see also Strong v. Hanover Ins. Co.*, 106 P.3d 604, 609 (Okla. Civ. App. 2004) (finding that where the policy language of this obligation tracked the requirements laid out in section 3636(F) the insured "was charged with notice of this statutorily imposed obligation"). And, despite the lack of express identification of Plaintiff's work vehicle in the Policy, the Collision Report—which was generated from the results of an investigation "[m]ade at [the s]cene" of the March 4, 2015 Accident where Plaintiff was present and issued that same day—clearly identifies "PHILADELPHIA INDEMNITY," along with the policy number and a telephone number, as the insurer of Plaintiff's work vehicle. Collision R. at 1.[4] In light of these facts, no reasonable jury could find that Plaintiff's interference was not "knowing." *See Liberty Lobby*, 477 U.S. at 252; *cf. McFadden*, 2013 WL 105214, at *3 (denying summary judgment on *Porter* defense where insurer presented no evidence to suggest that plaintiff was aware of policy at time he released his claims).

---

[4] Indeed, it is this Collision Report that Plaintiff argues her counsel relied upon to eventually determine with whom to file an insurance claim. *See* Pl.'s Resp. at 5.

Additionally, while Plaintiff's brief argues that Defendant's status as a UM carrier was not known to Plaintiff at the time she signed her releases, this argument is not supported by any affidavit or deposition testimony or any other evidentiary material permitted under Rule 56. As the only evidentiary material in the summary judgment record is consistent with a finding that Plaintiff knew of Defendant's insurance coverage (on a Policy that included UM coverage and outlined the insured's responsibilities with respect to settlement of claims against tortfeasors), this unsupported argument is insufficient to show a genuine issue under Rule 56. "Factual statements contained in [the party's] brief attributable to counsel . . . do not constitute summary judgment evidence[.]" *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

### 2. Whether Defendant Is Estopped to Assert a *Porter* Defense

"The *Porter* defense is . . . subject to several exceptions, including where the insurer's surrounding conduct gives rise to breach of contract, waiver, or estoppel." *Brambl*, 2011 WL 5326076, at *4 n.3. Plaintiff argues that Defendant should be estopped from asserting a *Porter* defense because Defendant knew about the accident in June 2015 but then "took over 800 days to begin investigating the circumstances behind the claim." Pl.'s Resp. at 7-10 (arguing that Defendant could not have been unduly prejudiced because it delayed its investigation).

The summary judgment record does not support application of estoppel principles. As outlined above, no "claim"—i.e., a "demand for payment" or other benefits under the Policy, *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1107 (Okla. 1991)—was transmitted to Defendant until August 2017. *See* Auto. Loss Notice of Aug. 17, 2017, at 1-2. Defendant likewise was not aware of Plaintiff's February 2017 settlements until this August 2017 claim was submitted. *See* Def.'s Mot. at 3; Pl.'s Resp. at 4. Even construing the record in the light most favorable to Plaintiff, all that Defendant had prior to August 2017 was notification that there had been a traffic accident involving a vehicle owned by Avalon (which did not request payment) and the July 2017 letter asking for insurance-coverage details. *See* Avalon Incident R. at 1; Pl.'s Ltr. at 1. Stated differently, the record does not show that Defendant unreasonably delayed any investigation, had knowledge that "the insured's damages exceed[ed] the liability coverage available under the tort-feasor's policy," or failed "to promptly produce a policy on request." *Phillips*, 263 F.3d at 1224. *Compare* Avalon Incident R., *and* Pl.'s Ltr., *with Buzzard*, 824 P.2d at 1114 (finding insurer was estopped from relying on *Porter* when it (i) unreasonably delayed payment after a "demand" had been made and (ii) encouraged the insurer to pursue another remedy "and then refused payment based on this settlement"), *and Strong*, 106 P.3d at 605-10 (finding a genuine issue as to whether insurer should be estopped from relying on *Porter* where insurer had notice of plaintiff's lawsuit against tortfeasor and plaintiff provided evidence that he had notified insurer of the prospect of settlement with tortfeasor).

"[A]n insured who deprives insurer, by settlement and release, of its right of subrogation against the wrongdoer thereby provides insurer with a complete defense to an

action on the policy." *Porter*, 643 P.2d at 305. Plaintiff, "by voluntarily and knowingly making settlement with and giving a general release" to the responsible party, "barred [Defendant] from exercising its lawful right of recourse against [that] party," and her action on the Policy is therefore precluded under Oklahoma law. *Id.* Because Defendant is entitled to summary judgment on this basis, the Court need not address Defendant's remaining argument.

## CONCLUSION

As outlined herein, Defendant's Motion for Summary Judgment (Doc. No. 27) is GRANTED. Judgment in favor of Defendant shall be entered.

IT IS SO ORDERED this 28th day of February, 2020.

_____
CHARLES B. GOODWIN
United States District Judge